UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MICHELLE WALKER,

               Plaintiff,                             Hon. Ellen S. Carmody

v.                                                  Case No. 1:10-CV-553

TODD WUIS, et al.,

               Defendants.

_____/


## OPINION

          This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>, (dkt. #51), and <u>Plaintiff's Motion to Amend Complaint</u>, (dkt. #58). On August 25, 2010, the parties consented to proceed in this Court for all further proceedings, including trial and an order of final judgment. *See* 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Janet T. Neff referred this case to the undersigned. (Dkt. #26). For the reasons articulated below, Defendants' motion is **granted**, Plaintiff's motion is **denied**, and Plaintiff's action **dismissed**.


## BACKGROUND

          Plaintiff initiated this action on June 7, 2010, against Grand Rapids Police Officer Todd Wuis and various "unknown parties." (Dkt. #1). The following allegations are contained in Plaintiff's complaint.

          At approximately 10:00 p.m. on the evening of July 5, 2007, Plaintiff was walking near the intersection of Bemis and Baxter streets when a vehicle rapidly approached her. Fearing that the

driver "was trying to rob her and or assault her," Plaintiff began running away. Plaintiff continued running, despite being instructed to "stop." Because she had not committed any crime and, furthermore, because the vehicle was not equipped with "overhead lights," Plaintiff had no reason to believe that the person instructing her to "stop" was a police officer. Plaintiff was also concerned because "there had been reports on the news that people had been impersonating police officers." The man quickly caught up to Plaintiff and "pushed" her to the ground at which point Plaintiff realized that the man in question was Grand Rapids Police Officer Todd Wuis. Defendant Wuis' conduct in pushing Plaintiff to the ground caused her to lose six teeth. After restraining Plaintiff, Officer Wuis handcuffed and arrested Plaintiff. After arresting Plaintiff, Officer Wuis, without first obtaining consent, searched Plaintiff's purse. The search of Plaintiff's purse revealed marijuana and cocaine therein.

Plaintiff asserts that Officer Wuis' actions violated her: (1) Fourth Amendment right to be free from illegal searches and seizures; (2) Eighth Amendment right to be free from cruel and unusual punishment; (3) Fourteenth Amendment right to due process of law; and (4) Fourteenth Amendment right to the equal protection of the laws. Plaintiff has also asserted numerous claims against various unknown parties. Defendant Wuis now moves for summary judgment. Plaintiff has responded by moving to amend her complaint. As discussed herein, Plaintiff's motion to amend is denied and Defendant Wuis' motion for summary judgment is granted. Furthermore, Plaintiff's claims against the various "unknown parties" are dismissed for failure to state a claim on which relief may be granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty*

*v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion

"is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

I.        **Fourth Amendment Claims**

The Fourth Amendment to the United States Constitution provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . ." U.S. Const. amend. IV. Plaintiff alleges three separate violations of these protections. Specifically, Plaintiff asserts that each of the following actions by Defendant Wuis violated her Fourth Amendment rights: (1) pushing her to the ground; (2) arresting her; and (3) searching her purse.

A.        Plaintiff's Arrest

Plaintiff alleges that her arrest by Officer Wuis violated her Fourth Amendment rights. Officer Wuis asserts that this claim was resolved against Plaintiff in a prior state court proceeding precluding her from re-litigating such in this Court. Officer Wuis further asserts that even if Plaintiff is permitted to advance this claim in this Court, summary judgment in his favor is warranted.

The United States Constitution requires that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. Art. IV § 1. This provision also extends to Congress the express authority to pass laws to "prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." *Id.* Pursuant to this authority, Congress has enacted 28 U.S.C. § 1738, which provides, in relevant part, that "judicial

proceedings. . .shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

It is well accepted that the scope of this statute includes the doctrines of res judicata and collateral estoppel. *See, e.g., Allen v. McCurry*, 449 U.S. 90, 94-96 (1980); *San Remo Hotel, L.P. v. City and County of San Francisco, California*, 545 U.S. 323, 336 (2005); *Jackim v. Sam's East, Inc.*, 378 Fed. Appx. 556, 561 (6th Cir., May 25, 2010) ("a federal civil action brought under § 1983 is not a venue for re-litigating issues that were decided in a prior state criminal case"). To determine the preclusive effect, if any, of prior state court judicial proceedings on the claims herein asserted, the Court must examine Michigan law on the subject. *See, e,g., Taylor v. Powell*, 2010 WL 4340626 at *3 (E.D. Mich., Oct. 27, 2010) ("Federal courts must apply state collateral estoppel law when determining whether a state court's judicial determination has preclusive effect in a § 1983 action").

Under Michigan law, collateral estoppel applies when: (1) the parties in both proceedings are the same or in privity;[1] (2) there was a valid, final judgment in the first proceeding; (3) the same issue was actually litigated in the first proceeding; (4) that issue was necessary to the judgment; and (5) the party against whom preclusion is asserted (or its privy) had a full and fair opportunity to litigate the issue. *See Taylor*, 2010 WL 4340626 at *3 (citations omitted); *see also*, *People v. Lall*, 2008 WL 2468467 at *6 (Mich. Ct. App., June 19, 2008) (quoting *People v. Gates*, 452 N.W.2d 627 (1990)). Crossover estoppel, where an issue adjudicated in a criminal proceeding is claimed to be precluded in a subsequent civil proceeding (or vice versa), is permitted under Michigan law. *See Taylor*, 2010 WL

---

[1] As discussed below, this particular requirement (also known as mutuality of estoppel) does not apply where a party seeks the defensive use of collateral estoppel, as is the case presently.

4340626 at *3 (citation omitted); *Niva v. McCardell*, 2011 WL 1519363 at *2 (Mich. Ct. App., Apr. 21, 2011).

The concept of mutuality of estoppel requires "that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action." *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 846 (Mich. 2004). The *Monat* court held, however, that mutuality is not required when collateral estoppel "is asserted defensively to prevent a party from relitigating an issue that such party has already had a full and fair opportunity to litigate in a prior suit." *Id.* at 850. Likewise, mutuality of estoppel is not required in the criminal-to-civil crossover context. *See Taylor*, 2010 WL 4340626 at *3 (citing *Monat*, 677 N.W.2d at 850).

As a result of the events of July 5, 2007, Plaintiff was charged with possession of marijuana and possession of cocaine. (Dkt. #53, Exhibit D at 34). On July 19, 2007, a preliminary examination was conducted at which Plaintiff, who was represented by counsel, argued that her arrest was unlawful. (Dkt. #53, Exhibit D at 28-29). The court bound Plaintiff over for trial on both charges. (Dkt. #53, Exhibit D at 33-36). In so concluding, the court expressly rejected Plaintiff's argument that her arrest was unlawful. (Dkt. #53, Exhibit D at 33-34). Specifically, the court observed that because Plaintiff, when approached by Officer Wuis, immediately "threw the contents of her purse" on the ground, Officer Wuis had probable cause to arrest Plaintiff for littering. (Dkt. #53, Exhibit D at 33-34). In the context of a subsequent motion to suppress, a different judge likewise concluded that there existed probable cause to arrest Plaintiff for littering. (Dkt. #53, Exhibit E at 13). Plaintiff subsequently pleaded guilty to possession of cocaine and possession of marijuana. (Dkt. #57, Exhibit B).

The Court finds that the requirements, articulated above, to invoke collateral estoppel are satisfied regarding Plaintiff's claim of unlawful arrest. Accordingly, Plaintiff is precluded from re-

litigating in this Court the issue of the lawfulness of her arrest.  This issue has previously been litigated with a determination that Plaintiff's arrest on the might in question was lawful and complied with the Fourth Amendment.  Defendant Wuis is, therefore, entitled to summary judgment as to this claim.  Furthermore, even if the Court were to find collateral estoppel inapplicable to this claim, the result is the same.

Probable cause to arrest an individual exists when "the facts and circumstances within [the officer's] knowledge and of which he had reasonably trustworthy information" are "sufficient to warrant a prudent man in believing that [an individual] has committed or was committing an offense." *United States v. Lanier*, 636 F.3d 228, 233 (6th Cir. 2011) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  The City of Grand Rapids prohibits "throw[ing] or deposit[ing] litter in or upon any street, sidewalk or other public place."  Grand Rapids, Michigan, Code of Ordinances art. 7 § 9.92.  Officer Wuis testified that as soon as Plaintiff recognized that he was a police officer, she took off running, throwing items from her purse on to the ground as she did so.  (Dkt. #53. Exhibit D at 9-10).  Thus, probable cause existed to arrest Plaintiff for the offense of littering.  Accordingly, Plaintiff's arrest did not violate the Fourth Amendment.

B.      Search of Plaintiff's Purse

After arresting Plaintiff, Officer Wuis searched Plaintiff's purse.  This search revealed cocaine and marijuana in a zippered compartment therein.  Plaintiff subsequently moved to suppress this evidence on the ground that the search of her purse violated her Fourth Amendment right to be free from unreasonable searches.  (Dkt. #53, Exhibit E).  Plaintiff's motion to suppress was denied on the ground that the search of her purse was a lawful search incident to a lawful arrest.  (Dkt. #53, Exhibit E at 13).

The Court finds that the requirements, articulated above, to invoke collateral estoppel are satisfied vis-a-vis Plaintiff's illegal search claim. Plaintiff is precluded, therefore, from re-litigating in this Court the issue of the lawfulness of the search of her purse. This issue has previously been litigated with a determination that the search of her purse was a lawful search incident to her lawful arrest. Accordingly, Defendant Wuis is entitled to summary judgment as to this claim. Furthermore, even if the Court were to find collateral estoppel inapplicable to this claim, the result is the same.

Warrantless searches are per se unreasonable, "subject only to a few specifically established and well-delineated exceptions." *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One such exception relates to "searches incident to a lawful arrest." *Northrop*, 265 F.3d at 379 (citing *Chimel v. California*, 395 U.S. 752, 762-63 (1969)). When conducting a search incident to arrest, police may search items within the "immediate control" of the person arrested. *Northrop*, 265 F.3d at 379 (citation omitted). The "area within a person's immediate control" has been defined to include the "area from within which he might gain possession of a weapon or destructible evidence." *Id.* (citation omitted). Furthermore, so long as the person "had the item within his immediate control near the time of his arrest," the item remains subject to a search incident to arrest "even if that item is no longer accessible to the [person] at the time of the search." *Id.* (citations omitted). As previously discussed, Plaintiff's arrest was lawful. There is no dispute that Plaintiff was in possession of her purse when she was arrested. Accordingly, the search of Plaintiff's purse incident to her arrest was lawful and did not violate the Fourth Amendment.

C.      Pushing Plaintiff to the Ground

Plaintiff alleges that during the encounter in question Defendant Wuis pushed her to the ground causing her to lose six teeth.  Plaintiff alleges that this conduct violated her rights under the Fourth Amendment.  Defendant Wuis counters that he is entitled to qualified immunity as to this claim.

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing litigation.  *See Davis v. Scherer*, 468 U.S. 183, 195 (1984).  As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated.  *Id.*  Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996).  The question of whether a defendant enjoys qualified immunity is a question of law for the Court to resolve.  *See Virgili v. Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001).  The plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity.  *See Hayden v. Green*, - - - F.3d - - -, 2011 WL 1676050 at *2 (6th Cir., May 5, 2011).

When evaluating claims of qualified immunity, the Court employs a two-step analysis. The Court first determines "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right."  *Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  If such fail to establish a violation of the plaintiff's constitutional rights, the defendant is entitled to immunity.  *See Callahan*, 129 S.Ct. at 816.  On the other hand, if the facts establish a violation of the plaintiff's constitutional rights, the Court must then determine whether the

right in question was "clearly established" at the time the defendant acted. The defendant is entitled to qualified immunity unless his "conduct violated a clearly established constitutional right." *Id.* The inquiry whether a particular right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009) (citing *Saucier*, 533 U.S. at 201). The contours of the right in question "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Fisher v. Harden*, 398 F.3d 837, 845 (6th Cir. 2005) (quoting *Saucier*, 533 U.S. at 202). The focus of this inquiry is "on whether the officer had fair notice that her conduct was unlawful." *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005).

Where neither the motion for qualified immunity nor the opposition thereto is supported by evidence, the first step of the qualified immunity analysis focuses on the allegations in the plaintiff's complaint and whether such state a claim for violation of the plaintiff's constitutional rights. If, on the other hand, the motion for qualified immunity and/or the opposition thereto are supported by evidence, such must be considered pursuant to the summary judgment standard articulated above. Thus, if the evidence submitted by the parties demonstrates the existence of a genuine factual dispute, the resolution of which is essential to determining whether the defendant violated the plaintiff's constitutional rights, qualified immunity is not warranted. However, if the evidence establishes that the defendant did not violate the plaintiff's constitutional rights, qualified immunity is appropriate. *See, e.g., Scott v. Harris*, 550 U.S. 372, 377-86 (2007) (officer entitled to qualified immunity where evidence was such that "no reasonable jury" could have concluded that officer violated the plaintiff's constitutional rights). Likewise, if the right in question was not "clearly established" at the time the defendant acted, the defendant is entitled to qualified immunity.

Generally, to find a clearly established constitutional right, the district court "must find binding precedent by the Supreme Court, its Court of Appeals or itself." *Fisher*, 398 F.3d at 845 (quoting *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177-78 (6th Cir. 1988)). In extraordinary circumstances, however, the decisions of other courts may suffice if such decisions "both point unmistakably to the unconstitutionality of the conduct complained of and are so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Fisher*, 398 F.3d at 845-46 (quoting *Seiter*, 858 F.2d at 1177). A single idiosyncratic opinion from another circuit's court of appeals, however, is insufficient to put a defendant on notice of how the Sixth Circuit might decide the issue in question. *See Davis v. Holley*, 835 F.2d 1175, 1182 (6th Cir. 1987).

In determining whether a defendant is entitled to qualified immunity, the focus is on the objective legal reasonableness of his actions in light of clearly established law as it existed when he engaged in the challenged conduct. *See Anderson*, 483 U.S. at 640; *Harlow*, 457 U.S. at 818; *Fisher,* 398 F.3d at 845. Accordingly, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fisher*, 398 F.3d at 845 (quoting *Saucier*, 533 U.S. at 202).

Finally, while it "is often appropriate" to evaluate qualified immunity claims by analyzing the two analytical steps in sequence, such is no longer mandated. *See Callahan*, 129 S.Ct. at 818. As the *Callahan* Court stated, "[t]he judges of the district courts. . .should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

When force is used in the course of an arrest or seizure of a "free person," as opposed to a convicted prisoner, the lawfulness of the force employed is evaluated by reference to the Fourth Amendment. *See Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). The Fourth Amendment protects individuals from the use of excessive force when police make an arrest or seizure. *See Dorsey v. Barber*, 517 F.3d 389, 401 (6th Cir. 2008). When assessing whether the use of force in a particular instance was excessive, the Court must consider the specific facts and circumstances of the incident in question, including: (1) the severity of the crime; (2) the immediacy of the threat posed by the individual; and (3) whether the individual was actively resisting or attempting to evade arrest. This standard "contains a built-in measure of deference to the officer's on the spot judgment about the level of force necessary in light of the circumstances of the particular case. *Id.* The Fourth Amendment "does not require officers to use the best technique available as long as their method is reasonable under the circumstances." *Dickerson v. McClellan*, 101 F.3d 1151, 1160 (6th Cir. 1996). As the Supreme Court long ago stated:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . .*Not every push or shove,* even if it may later seem unnecessary in the peace of a judge's chamber, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation.

*Graham v. Connor*, 490 U.S. 386, 397 (1989)); *see also*, *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004).

The evidence thus far submitted, interpreted in a light most favorable to Plaintiff, reveals the following. Plaintiff observed a vehicle approaching her as she was crossing the street. (Dkt. #1,

Exhibit A; Dkt. #53, Exhibit F at 48; Dkt. #57, Exhibit A). Fearing that the driver of this vehicle (Officer Wuis) was going to "rob" or "assault" her, Plaintiff began running away. (Dkt. #1, Exhibit A; Dkt. #53, Exhibit F at 53; Dkt. #57, Exhibit A). Plaintiff continued running, despite being instructed by Wuis to "stop." (Dkt. #1, Exhibit A). When Wuis caught up with Plaintiff he initially attempted to detain Plaintiff by grabbing her blouse, but Plaintiff "pulled away" and continued running. (Dkt. #53, Exhibit D at 10). Wuis then used his elbow to knock Plaintiff down. (Dkt. #53, Exhibit F at 56-57).

Plaintiff also alleges that she was injured as a result of being knocked down. Specifically, Plaintiff alleges that she suffered an abrasion to her left knee, a bump to her left wrist, and the loss of six teeth. (Dkt. #1, Exhibit A; Dkt. #53, Exhibit F at 19-30). Photographs taken following Plaintiff's arrest reveal that Plaintiff suffered a very minor abrasion to her left knee. (Dkt. #53, Exhibit B; Dkt. #53, Exhibit F at 31-34). As for the alleged bump on her left wrist, Plaintiff offers no medical evidence regarding the existence or severity of such. Plaintiff likewise offers no evidence that she received any contemporaneous treatment for this alleged injury. At her deposition, however, Plaintiff testified that in 2009 she was instructed to wear a wrist brace which she did "for about two or three months." (Dkt. #53, Exhibit F at 28-30). Regarding her alleged tooth loss, Plaintiff offers no evidence that such was caused by or related to Officer Wuis' actions. Plaintiff acknowledges that she "did not complain about [her] teeth the day of the incident." (Dkt. #57, Exhibit A). At her deposition, Plaintiff conceded that she suffered no tooth loss after the incident in question. (Dkt. #53, Exhibit F at 20-21). Instead, Plaintiff asserted that the teeth in question "just started falling out" at some later unspecified date. (Dkt. #53, Exhibit F at 20-21). Plaintiff's dentist testified that Plaintiff's tooth loss was the result of advanced periodontal disease which preceded and was unrelated to the incident in question. (Dkt. #53, Exhibit H at 9-14).

As discussed above, Officer Wuis had probable cause to arrest Plaintiff. As is well recognized, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Dorsey*, 517 F.3d at 399 (quoting *Graham*, 490 U.S. at 396). Plaintiff by her own admission was fleeing from Officer Wuis, who after attempting without success to detain Plaintiff by grabbing her clothing, simply used his elbow to force her to the ground. In light of this evidence, the Court concludes that Plaintiff has failed to establish that she suffered a violation of her Fourth Amendment rights. *See, e.g., Dunigan*, 390 F.3d at 488-95 (police officer entitled to qualified immunity because act of shoving individual in the course of arrest did not violate the Fourth Amendment); *Lyons*, 417 F.3d at 576-578 (police officer entitled to qualified immunity where act of tackling individual in the course of an arrest did not violate the Fourth Amendment). With respect to its conclusion that the officer in question was entitled to qualified immunity, the *Dunigan* court observed the following, which is equally applicable in the present matter:

> A contrary conclusion would invite any third party who is unhappy about an arrest to resist that arrest, however mildly, hoping an officer would simply desist rather than chance violating that party's constitutional rights. This is simply an unacceptable alternative. For us to "fine-tune" the situation arising in Plaintiff's home on the morning of March 8, 2001, from the warm comfort of our chambers would undercut the *necessary* element of judgment inherent in Officer Noble's attempt to control a volatile chain of events. "[J]udged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," Officer Noble's actions did not violate Plaintiff's Fourth Amendment rights.

*Dunigan*, 390 F.3d at 495.

Accordingly, Defendant Wuis is entitled to qualified immunity as to this particular claim. Furthermore, even if the Court assumes that Plaintiff had established a violation of her Fourth Amendment rights, Defendant Wuis is still entitled to qualified immunity because Plaintiff has failed

to identify (and the Court has not located) any authority that would have made clear to a reasonable police officer that the conduct in question "was unlawful in the situation [Officer Wuis] confronted." Defendant Wuis is, therefore, entitled to qualified immunity as to Plaintiff's excessive force claim.

## II.        Eighth Amendment Claim

Plaintiff alleges that her Eighth Amendment right to be free from cruel and unusual punishment was violated when Officer Wuis forced her to the ground to effectuate her arrest. While presented as an Eighth Amendment claim, the Eighth Amendment does not apply to such. Because Plaintiff was not at the time a convicted prisoner, this particular claim is analyzed under the Fourth Amendment - not the Eighth Amendment. *See Phelps*, 286 F.3d at 299. Accordingly, Defendant Wuis is entitled to summary judgment as to this claim.

## III.        Equal Protection

Plaintiff alleges that Officer Wuis' conduct violated her Fourteenth Amendment right to the equal protection of the laws. Specifically, Plaintiff alleges that "had she been a Caucasian person" Officer Wuis would not have pursued and arrested her.

The fact that the arrest and search in question were lawful does not dispose of Plaintiff's equal protection claim, because the Equal Protection Clause "provides protection from constitutionally unequal treatment independent of the Fourth Amendment's protection against unreasonable searches and seizures." *Cunningham v. Sisk*, 136 Fed. Appx. 771, 774 (6th Cir., May 18, 2005). To prevail on this particular claim, however, Plaintiff must present evidence that Officer Wuis acted with a discriminatory purpose. *See Id.; United States v. Avery*, 137 F.3d 343, 355 (6th Cir. 1997).

Plaintiff has failed to present any evidence that Officer Wuis acted with a discriminatory purpose on the night in question. In fact, at her deposition Plaintiff acknowledged that she had no evidence in support of this claim. (Dkt. #53, Exhibit F at 82-84). Because Officer Wuis has demonstrated that Plaintiff cannot sustain her burden at trial as to this claim, he is entitled to summary judgment as to such.

IV.     **Due Process**

Plaintiff alleges that Officer Wuis' conduct also violated her Fourteenth Amendment right to due process of law. Plaintiff has not indicated whether she is asserting a substantive due process claim, a procedural due process claim, or both. This is of no consequence, however, as Officer Wuis is entitled to summary judgment as to both types of claims.

A.     Procedural Due Process

The Fourteenth Amendment "does not protect against all deprivations of liberty", but instead "protects only against deprivations of liberty accomplished without due process of law." *Hillblom v. County of Fresno*, 539 F.Supp.2d 1192, 1207 (E.D. Calif. 2008) (quoting *Baker v. McCollan*, 443 U.S. 137, 145 (1979)). A procedural due process claim challenges "the procedures used in effecting a deprivation." *Hillblom*, 539 F.Supp.2d at 1207-08 (citation omitted). However, the Constitution "does not guarantee that only the guilty will be arrested." *Id.* (quoting *Baker*, 443 U.S. at 145). As discussed in detail above, Plaintiff has failed to establish that Officer Wuis' actions were unlawful or otherwise procedurally deficient. Defendant Wuis is, therefore, entitled to summary judgment as to this claim.

B.     Substantive Due Process

In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court addressed the interaction between substantive due process and those rights specifically protected by the Bill of Rights, as well as the proper constitutional foundation upon which to base a § 1983 action.

In that case, Albright was charged with selling a substance that looked like an illegal drug. Following a preliminary hearing, Albright was bound over for trial; however, the court later dismissed the charges because the offense with which Albright was charged did not state an offense under Illinois law. Albright subsequently initiated a § 1983 action in which he charged Oliver, a detective involved in the case, with depriving him of his Fourteenth Amendment substantive due process rights by subjecting him to criminal prosecution without probable cause. *Id.* at 268-70.

The Court observed that substantive due process protection had "for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Id.* at 272 (citing *Planned Parenthood of Southeast Pa. v. Casey*, 505 U.S. 833, 847-849 (1992)). The Court noted the dissimilarity between Albright's claim and the substantive due process rights recognized previously, and further noted its reluctance to expand the concept of substantive due process. *Id.* at 271-72.

The Court then discussed the fact that a number of the protections contained in the Bill of Rights have been made applicable to the states via the Fourteenth Amendment. The Court observed that this process has resulted in the substitution of the specific guarantees of these portions of the Bill of Rights for the more generalized language of the Fourteenth Amendment. *Id.* at 272-73. The Court, therefore, concluded that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the

more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Id.* at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Applying this standard, the Court concluded that Albright's allegations directly implicated the Fourth Amendment, pursuant to which he must bring his claim, because substantive due process could afford him "no relief." *Id.* at 274-75.

Here, Plaintiff alleges that her due process rights were violated because Officer Wuis violated her right to be free from unreasonable searches and seizures. This right is adequately protected by the Fourth Amendment. Therefore, as in *Albright*, substantive due process can provide Plaintiff no relief. Defendant Wuis is, therefore, entitled to summary judgment as to Plaintiff's substantive due process claims.

## V.                  Claims Against "Unknown Parties"

In her complaint, Plaintiff asserts several claims against unidentified "John Doe Shift Commanders and Supervisors" for failing to properly train and supervise Officer Wuis. However, liability in a § 1983 action cannot be based upon a theory of respondeat superior or vicarious liability, as Plaintiff must instead allege personal involvement by a particular defendant. *See Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (liability is not to be found in passive behavior or an alleged failure to act, rather liability must be based upon "active unconstitutional behavior"); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998); *Loggins v. Franklin County, Ohio*, 218 Fed. Appx. 466, 470 (6th Cir., Mar. 1, 2007); *Ingram v. Jewell*, 94 Fed. Appx. 271, 273 (6th Cir., Mar. 24, 2004). Accordingly, Plaintiff's claims against these unknown parties are dismissed for failure to state a claim

on which relief may be granted.[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937 (2009).

**VI.**         **Plaintiff's Motion to Amend**

Plaintiff initiated this action on June 7, 2010. Plaintiff was permitted to proceed as a pauper in this matter and the United States Marshal was directed to effect service on Defendant Wuis. Service could not be effected on the "unknown parties" named in Plaintiff's complaint, however, because these individuals were not sufficiently identified. In the more than ten months since, Plaintiff has neither requested an extension of time to effect service on these unknown parties nor requested the Court's assistance in identifying and/or effecting service on these individuals. Plaintiff now moves to amend her complaint to name the unknown parties identified in her complaint.

Plaintiff is not eligible to amend her complaint as a matter of course, thus she can amend her complaint only by leave of the Court. Pursuant to Federal Rule of Civil Procedure 15(a)(2), leave shall be freely given "when justice so requires." The factors relevant when considering a motion to amend include: (1) undue delay in filing, (2) lack of notice to the opposing party, (3) bad faith by the moving party, (4) repeated failure to cure deficiencies by previous amendments, (5) undue prejudice to the opposing party, and (6) futility of amendment. *See Wade v. Knoxville Utilities Board*, 259 F.3d 452, 458 (6th Cir. 2001). Notice and substantial prejudice to the opposing party are the "critical factors" in determining whether an amendment should be granted. *Id.* at 458-59. Moreover, when a party seeks to amend its complaint at a late stage of the litigation, "there is an increased burden to show justification

---

[2] While Defendant has moved for summary judgment, because Plaintiff is proceeding in forma pauperis the Court possesses the authority to dismiss at any time any claim that fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2) ("the court *shall* dismiss the case at any time if the court determines that. . .the action or appeal. . .fails to state a claim on which relief may be granted") (emphasis added).

for failing to move earlier." *Id.* at 459. Furthermore, a motion to amend a complaint "should. . .be denied if the amendment. . .would be futile." *TolTest, Inc. v. North American Specialty Ins. Co.*, 362 Fed. Appx. 514, 518 (6th Cir., Jan. 27, 2010).

Plaintiff's motion to amend is denied for two reasons. First, Plaintiff has failed to submit with her motion to amend a complete proposed amended complaint. This prevents the Court from properly evaluating Plaintiff's motion and also serves to create confusion for the parties and the Court as to precisely what claims are being advanced in this matter and against whom such are asserted. Secondly, and more importantly, for the reasons discussed in the preceding section Plaintiff's amendment would be futile as her allegations against the individuals in question fail to state a claim on which relief may be granted. Plaintiff's motion to amend her complaint is, therefore, **denied**.

## CONCLUSION

For the reasons articulated herein, <u>Defendants' Motion for Summary Judgment</u>, (dkt. #51), is **granted**; <u>Plaintiff's Motion to Amend Complaint</u>, (dkt. #58), is **denied**, and Plaintiff's action is hereby **dismissed**. An Order consistent with this Opinion will enter.

Date: May 25, 2011                           _/s/ Ellen S. Carmody_____
                                            ELLEN S. CARMODY
                                            United States Magistrate Judge